UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristi VonDeylen, | Civil Action No. 24-cv-2051 DWF/DJF |
| Plaintiff, | |
| v. | |
| Aptive Environmental LLC, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION**

Plaintiff, Kristi VonDeylen ("Plaintiff"), respectfully submits this Memorandum in Opposition to the Renewed Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (the "Motion to Compel") (*ECF #17*) filed by Defendant, Aptive Environmental LLC ("Defendant"). As explained below, the claims asserted by Plaintiff against Defendant are not subject to any binding arbitration clause because the services agreement at issue in this case had expired long before the illegal text messages sent by Defendant to Plaintiff. Accordingly, the Court should deny the Defendant's Motion to Compel.

**BACKGROUND**

As set forth in Plaintiff's Amended Complaint (hereinafter "Am. Compl." (*ECF #15*)), on February 1, 2006, Plaintiff's cellular telephone number was put on the national Do-Not-Call ("DNC") registry. (Am. Compl. ¶ 23.) Several years later, in May 2020,

1

Plaintiff sought and consented to pest control services with Defendant under customer number #1670876.  (*Id.* ¶ 25.)  Plaintiff's contract with Defendant contemplated that Defendant would provide quarterly pest control services for the 12-month duration of the contract.  (*Id.* ¶ 26.)  Notably, on the "Welcome Checklist" that Plaintiff signed with Defendant, she expressly declined any consent to receiving text messages as she did not check the consent box on the agreement as noted below:

> [ ] I agree that Aptive may call, text, and email me for marketing or other purposes at the phone number(s) and email address(es) I provide to Aptive. I authorize Aptive to record calls and use an automated dialing system or prerecorded voice for calls and texts (message and data rates may apply). I understand this consent is not required to obtain Aptive's services and that failure to provide consent does not negate Aptive's ability to manually call or text me in accordance with applicable laws.

(*Id.* ¶ 27-28.)

Moreover, the agreement clarified that the term of service covered by the pest control agreement was limited to twelve (12) months.  (*Id.* ¶ 29.)  Indeed, after January 12, 2021, Defendant just stopped coming and stopped performing services, and Plaintiff did not pay for their services after that date.  (*Id.* ¶ 30.)

Nonetheless, more than two years after the parties' agreement and their relationship had expired, on June 2, 2023, at 10:17 a.m., Plaintiff received an automated text from Defendant asking her to set up "autopay" from the number 612-662-2847.  (*Id.* ¶¶ 31-32.)  Defendant had not obtained express consent from Plaintiff before sending this unsolicited text message, which was placed on Plaintiff's wireless telephone via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227 (a)(1).  (*Id.* ¶¶ 33-34.)

2

Plaintiff replied "[S]top," and received an automated response text stating that she had been unsubscribed. (*Id.* ¶ 35.)

Despite purportedly being unsubscribed from Defendant's automated text messages, on November 23, 2023, Thanksgiving morning, Plaintiff received another automated text message from Defendant that she had an upcoming appointment on November 27, 2023. (*Id.* ¶ 36.) Plaintiff again replied, "[S]top," and received an automated response text stating that she had been unsubscribed from 62318. (*Id.* ¶ 37.) Later that same day, at 10:52 a.m. CST on November 23, 2023, Plaintiff received another text message from Defendant. (*Id.* ¶ 38.) Then again, on November 27, 2023, at 7:22 a.m. CST, Plaintiff received another personal text message from Defendant's technician, Anna, telephone number 952-200-7448, stating that she would be at Plaintiff's house for service around 8:00 a.m. that morning. (*Id.* ¶ 40.) The plaintiff immediately responded and told the Defendant's representative, Anna, that she had never requested this service. (*Id.* ¶ 42.) The defendant's representative, Anna, apologized and stated there was a glitch in the Defendant's system that added people from years ago. (*Id.* ¶ 43.)

Nevertheless, Plaintiff received another automated text message from Defendant on November 27, 2023, at 9:02 a.m. CST that she had an upcoming appointment that day. (*Id.* ¶ 44.) Plaintiff again replied, "[S]top," and received an automated response text stating that she had been unsubscribed from 62318. (*Id.* ¶ 45.) That same day, November 27, 2023, Plaintiff received a direct text message from Defendant's representative from telephone number 651-571-4776, stating that Defendant went ahead and closed Plaintiff's account since her home had not been serviced since 2021. (*Id.* ¶ 46.)

3

Based on these facts, Plaintiff commenced this class action case asserting claims for negligent violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* (the "TCPA"), willful violation of the TCPA, and invasion of privacy. (*See* Am. Compl. ¶¶ 59-73.) In response to Plaintiff's suit, Defendant filed its Motion to Compel, seeking to enforce an arbitration clause in the Service Agreement, even though the agreement and the parties' relationship had expired more than two years before Defendant sent the illegal text messages. Plaintiff now submits this Opposition to Defendant's Motion to Compel, so that this case can move forward in this Court.

## **ARGUMENT**

### A. **Governing Legal Principles.**

As a general matter, the Federal Arbitration Act (the "FAA") establishes a federal policy favoring arbitration that requires courts to enforce agreements to arbitrate rigorously. *Shearson/American Express, Incv. v. McMahon*, 482 U.S. 220, 226 (1987). In that regard, Section 2 of the FAA provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2. While a general presumption exists in favor of arbitration, *see Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001), the presumption can only be triggered by a valid arbitration agreement.

In light of these principles, consideration of a motion to compel arbitration under the FAA involves a two-step inquiry: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute falls within the scope of that arbitration agreement. *Simitar Entm't, Inc. v. Silva Entm't*, 44 F. Supp. 2d 986, 992 (D. Minn. 1999).

4

In engaging in the two-step inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). Moreover, "applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . ." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

> **B.   The Court Should Deny Defendant's Motion to Compel Because Plaintiff's Claims Are Not Covered By The Arbitration Clause in the Aptive Service Agreement.**

This Court may only compel arbitration pursuant to Section 2 of the FAA if the contract is valid and enforceable and if the dispute before the court falls within the scope of the arbitration agreement. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). Despite public policy favoring arbitration, "parties cannot be forced to arbitrate disputes that they did not agree to arbitrate." *Martin Ankeny Corp. v. CTB Midwest, Inc.*, No. 414CV00516SMRHCA, 2016 WL 7426584, at *6 (S.D. Iowa Mar. 18, 2016) (citing *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

Further, a court may "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Thus, a court can order a dispute to arbitration only if, under the principles of contract law, "the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis added). "It is the language of the contract that defines the scope of disputes subject to

5

arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered by the agreement." *Id.*

As Defendant pointed out in its Motion to Compel brief, the service agreement contains the following arbitration clause:

> ARBITRATION. READ THIS ARBITRATION PROVISION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS IF THERE IS A DISPUTE.
>
> Unless you reject this arbitration provision in the manner specified below, ***any controversy, dispute or claim between you and the Aptive arising out of or relating to this Agreement, or the services performed by Aptive under this Agreement or any other agreement, or the relationship between you and Aptive resulting from any of the foregoing***, including tort, contract, equitable and statutory claims, and any claims for personal or bodily injury or damage to real or personal property, regardless of whether the controversy or claim arose before or after the execution, transfer or acceptance of this Agreement, shall be settled by binding arbitration. ***However, disputes regarding the scope and enforceability of this arbitration provision shall be determined by a court, not an arbitrator.*** Also, individual small claims court actions are not subject to this arbitration provision as long as they remain in that court.

(*See* ECF 18, Mot. to Compel Br. at 2-3 (emphasis added).)

Plaintiff readily recognizes that the arbitration clause, on its face, is a "broad" clause as it covers claims "arising out of or relating to" the service agreement. *See Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018) (stating that "arbitration clauses covering claims 'arising out of or 'related to' an agreement are broad"). Further, in addressing a broad arbitration clause, courts ask whether "the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* at 875 (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

Even though the arbitration clause uses the broad "arising out of or relating to" parlance, the claim must still be tethered to either the underlying agreement, the services contemplated under the agreement, or the parties' relationship. The plaintiff's claims do not relate to (or arise from) any of those dynamics. Rather, Plaintiff's claims arise from Defendant's attempt to flout the TCPA by sending unsolicited and improper text messages using an auto-dialer. Plaintiff's claims do not assert any breach of the service agreement, nor do the claims take issue with any of the services that Defendant previously performed under the agreement during the life of the agreement. Nor do Plaintiff's claims relate to the relationship between the parties under the agreement, as the parties' relationship had ceased to exist when the agreement expired by its terms and when Defendant stopped performing any services under it. Indeed, Defendant's representative explicitly admitted that the relationship between the parties had expired, and no services were being conducted, such that the text messages from Defendant to Plaintiff were sent in error.

It bears emphasis that courts have interpreted the phrase "arising out of or relating to" only to encompass claims that "had their genesis in, arose out of, and [that were] related to the contract." *Kennedy v. ITV Direct, Inc.*, No. CIV. 08-6244 ADM/JSM, 2009 WL 1272098, at *2 (D. Minn. May 4, 2009) (internal quotation marks omitted; citation omitted). In this case, there is nothing in Plaintiff's claims that pertains to the pest control service agreement, the services contemplated by that agreement, or the relationship between the parties that had previously existed per the agreement. *See Unison Co.*, 789 F.3d at 818 (doubts as to the applicability of an arbitration clause should not be decided in

favor of arbitration where 'the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (citation omitted)).

Moreover, courts have noted that even broad arbitration clauses have limits and that arbitrable claims must fall within those limits and be tethered to the substance of the underlying agreement in some way. *See Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related - with at least some directness - to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause."); *see also Gamble v. New England Auto Finance, Inc.*, No. 17-15343, 2018 WL 2446607 (11th Cir. May 31, 2018) ("Ms. Gamble's TCPA claim, on the other hand, arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law. And NEAF's sending of the text messages do not relate to or arise from its lending money to Ms. Gamble, Ms. Gamble's repayment of that loan, or the vehicle which secured the loan."). In light of these authorities, Plaintiff's TCPA and invasion of privacy claims against Defendant are not arbitrable.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel (*ECF #17*).

Dated this 20th day of August 2024.

                    Respectfully submitted,

                    */s/ Thomas J. Lyons Jr.*
                    Thomas J. Lyons, Jr., Esq.
                    Attorney I.D. #: 249646
                    Carter By. Lyons, Esq.
                    Attorney I.D. #: 0403655
                    **CONSUMER JUSTICE CENTER, P.A.**
                    367 Commerce Court
                    Vadnais Heights, MN 55127
                    Telephone: (651) 770-9707
                    Facsimile: (651) 704-0907
                    tommy@consumerjusticecenter.com
                    carter@consumerjusticecenter.com

                    *ATTORNEYS FOR PLAINTIFF*