UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kristi VonDeylen,                                    Civil No. 24-2051 (DWF/DJF)

        Plaintiff,

v.                                                                        MEMORANDUM
                                                  OPINION AND ORDER
Aptive Environmental LLC,

        Defendant.

## INTRODUCTION

This matter is before the Court on a motion to compel arbitration and stay proceedings brought by Defendant Aptive Environmental LLC ("Aptive"). (Doc. No. 17.) Plaintiff Kristi VonDeylen ("Plaintiff") opposes the motion. (Doc. No. 24.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

On February 1, 2006, Plaintiff's cellular phone number was placed on the national Do-Not-Call ("DNC") registry. (Doc. No. 15 ("Am. Compl.") ¶ 23.) Years later, in May of 2020, Plaintiff sought out and consented to pest control services to be performed by Aptive. (*Id.* ¶ 25.) At that time, Plaintiff signed and agreed to a Service Agreement with Aptive (the "Aptive Agreement"), under which Aptive would perform quarterly services for the duration of twelve months. (*Id.* ¶ 26.) The Aptive Agreement contained the following arbitration provision:

ARBITRATION. READ THIS ARBITRATION PROVISION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS IF THERE IS A DISPUTE.

Unless you reject this arbitration provision in the manner specified below, any controversy, dispute or claim between you and [] Aptive *arising out of or relating to this Agreement, or the services performed by Aptive under this Agreement or any other agreement, or the relationship between you and Aptive resulting from any of the foregoing, including tort, contract, equitable and statutory claims, and any claims for personal or bodily injury or damage to real or personal property, regardless of whether the controversy or claim arose before or after the execution, transfer or acceptance of this Agreement, shall be settled by binding arbitration.* However, disputes regarding the scope and enforceability of this arbitration provision shall be determined by a court, not an arbitrator . . . . IF A CLAIM IS ARBITRATIED, YOU AND APTIVE WAIVE ANY RIGHT TO A COURT OR JURY TRIAL. YOU AND APTIVE ALSO WAIVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE. ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER OR TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OR ANY OTHER PERSONS (THE "CLASS ACTION WAIVER"). NO ARBITRATOR SHALL HAVE AUTHORITY TO CONDUCT ANY ARBITRATION IN VIOLATION OF THIS PROVISION OR TO ISSUE ANY RELIEF THAT APPLIES TO ANY PERSON OR ENTITY OTHER THAN AND/OR APTIVE INDIVIDUALLY.

. . . .

*This arbitration provision shall survive the termination of this Agreement* . . . .

IF YOU DO NOT WANT THIS ARBITRATION PROVISION TO APPLY, YOU MAY REJECT IT BY MAILING A SIGNED REJECTION NOTICE TO APTIVE ENVIRONMENTAL, LLC, ATTN: ARBITRATION OPT OUT, 5132 N 300 W #150, PROVO, UT 84604 WITHIN THIRTY (30) CALENDAR DAYS AFTER THE DATE OF THIS AGREEMENT. ANY REJECTION NOTICE MUST INCLUDE YOUR NAME, ADDRESS, EMAIL ADDRESS AND TELEPHONE NUMBER AND STATE THAT YOU REJECT THE ARBITRATION PROVISON. IF YOU REJECT THIS ARBITRATION PROVISION, THAT WILL NOT AFFECT ANY OTHER PROVISON OF THE AGREEMENT.

(Doc. No. 19-2 § 12 (bolded, italicized emphasis added).)

Aptive submits, and Plaintiff does not dispute, that it did not receive a mailed notice from Plaintiff rejecting this arbitration provision. (Doc. No. 19-1 ¶ 4.)

The Aptive Agreement additionally states that Aptive is permitted to contact Plaintiff for the purpose of appointment reminders and account communications:

> EMAIL AND PHONE NUMBER NOTIFICATIONS; PRIVACY POLICY: I request that Aptive send me notifications via email, text message, and/or phone call using the cell phone number, land line number, and/or emails that I provided to Aptive, to . . . (ii) schedule and/or confirm service times and dates, and/or (iii) to communicate with me regarding my account (including, without limitation, to collect outstanding or post due amounts that I owe to Aptive).

(Doc. No. 19-2 § 13.)

Separate from the Aptive Agreement, there was an additional "Welcome Checklist" that Plaintiff signed. (Am. Compl. ¶ 27.) The "Welcome Checklist" contained a clause that allowed Plaintiff to consent to receiving text messages which stated:

> [ ] I agree that Aptive may call, text, and email me for marketing or other purposes at the phone number(s) and email address(es) I provide to Aptive. I authorize Aptive to record calls and use an automated dialing system or prerecorded voice for calls and texts (message and data rates may apply). I understand this consent is not required to obtain Aptive's services and that failure to provide consent does not negate Aptive's ability to manually call or text me in accordance with applicable laws.

(*Id.*) Plaintiff did not check the box on the checklist. (*Id.* ¶ 28.) Aptive's and Plaintiff's agreement and services relationship formally ended in January of 2021. (*Id.* ¶¶ 30-31.)

3

On June 2, 2023, Plaintiff received an automated text from Aptive requesting that she set up "autopay." (*Id.* ¶ 32.) Plaintiff replied "[S]top," to this message and received a message stating that she was unsubscribed. (*Id.* ¶ 35.) Then on November 23, 2023, Plaintiff received another automated text message, letting her know that she had an upcoming appointment, on November 27, 2023. (*Id.* ¶ 36.) Plaintiff again replied "[S]top," and received a message stating that she was unsubscribed. (*Id.* ¶ 37.) Later that same day, Plaintiff received another message from Aptive. (*Id.* ¶ 38.) On November 27, 2023, Plaintiff received a personalized text message from an Aptive technician letting her know that she would be at her residence to conduct service later that morning. (*Id.* ¶ 40.) In response, Plaintiff told the Aptive technician that she did not request this service. (*Id.* ¶ 42.) The technician apologized and explained that there was a glitch in Aptive's system that added past customers. (*Id.* ¶ 43.) Plaintiff received another text from Aptive that day. (*Id.* ¶ 44.) Plaintiff responded "[S]top" again and received an accompanying message letting her know that she was unsubscribed. (*Id.* ¶ 45.) Still on the same day, Plaintiff received a direct message from an Aptive representative informing Plaintiff that Plaintiff's account had been closed since her home has not been serviced by Aptive since 2021. (*Id.* ¶ 46.)

Plaintiff filed a class action complaint seeking damages, injunctive relief, and any other available legal remedy. (*Id.* ¶ 1.) Plaintiff asserts claims for negligent violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* (the "TCPA"), willful violation of the TCPA, and invasion of privacy. (*Id.* ¶¶ 59-73.) Aptive now moves to

4

compel arbitration and stay proceedings pending arbitration. (Doc. No. 17.) Plaintiff opposes the motion. (Doc. No. 24.)

## DISCUSSION

I.  **Legal Standard**

A motion to compel arbitration is evaluated under the Federal Rules of Civil Procedure either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside of the pleadings. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). Documents "necessarily embraced by the complaint" are considered part of the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Because the Aptive Agreement is embraced by the complaint, the motion to compel arbitration is analyzed under Rule 12(b)(6). In evaluating a 12(b)(6) motion, the Court must accept all factual allegations as true and view all reasonable inferences in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The factual allegations in the complaint must "raise a right to relief above the speculative level." *Id.* at 555.

II.  **Aptive's Motion to Compel Arbitration**

Through the Federal Arbitration Act ("FAA"), Congress has established a strong federal policy favoring arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In considering a petition to compel arbitration, a court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Pro Tech*

5

*Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994). These "threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014).

Plaintiff does not dispute that the arbitration clause in the Aptive Agreement is valid. Instead, the parties dispute whether the arbitration agreement encompasses the current dispute. The Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999).

Aptive argues that the arbitration clause between the parties is broad, contains no exclusionary language, and that Plaintiff's claims under the TCPA are tethered to the agreement, the services contemplated under the agreement, or the parties' relationship. In particular, Aptive argues that "but for" the Aptive Agreement, the parties would not have a relationship and Plaintiff's phone number would not be in Aptive's system. In addition, Aptive points out that while the relationship between the parties had expired, the arbitration provision contained a survival clause. Plaintiff, on the other hand, while recognizing the broad language of the arbitration agreement, argues that her claims do not fall within the scope of the arbitration provision. Instead, Plaintiff argues that her claims arise from Aptive's sending of unsolicited text messages that did not relate to the parties' relationship and that occurred after the expiration of their contractual relationship.

6

The arbitration clause broadly states that it covers "any controversy, dispute or claim between [Plaintiff] and [] Aptive arising out of or relating to [the Aptive] Agreement, or the services performed by Aptive under this Agreement or any other agreement, or the relationship between you and Aptive . . . ." (Doc. No. 19-2 § 12.) With this broad language in mind, the Court must consider whether Plaintiff's claims, and the underlying factual allegations, "touch matters covered by the arbitration provision." *See Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 875 (8th Cir. 2018). After careful consideration, the Court concludes that Plaintiff's claims are not covered by the arbitration agreement. Plaintiff's claims center on unsolicited text messages that were sent more than two years after the expiration of the parties' contractual relationship. Plaintiff's claims relate solely to the propriety of the texts in light of Plaintiff's cell number being on the DNC registry.[1] The claims do not relate to the services provided to Plaintiff under the Aptive Agreement. That the arbitration clause survives termination does not change the Court's conclusion. Indeed, had Plaintiff sued Aptive for services provided under the Aptive Agreement *after* the agreement expired, then that provision would have applied to the Court's analysis. But that provision cannot be used to sweep

---

[1] Aptive argues that the basis of Plaintiff's claim is that Plaintiff did not check the box in the Welcome Checklist consenting to the receipt of text messages from Aptive. Aptive reasons that Plaintiff's reliance on the lack of consent to support her claims demonstrates that Plaintiff's claims are, indeed, tethered to the Aptive Agreement. The Court respectfully disagrees with Aptive's argument on this point. Plaintiff's claims are based on the alleged violation of the TCPA, not on the unsigned consent provision. *See, e.g.*, *Gamble v. New Eng. Auto Fin., Inc.*, 735 F. App'x 664, 666 (11th Cir. 2018) (11th Cir. May 31, 2018) ("The fact that [defendant] requested, but was refused, [Plaintiff's] consent to receive text messages does not somehow transform the [consent provision] into the source of [Plaintiff's] rights regarding those text messages.").

7

in any post-agreement claim despite the lack of connection to the parties' agreement or relationship. In the same vein, the fact that Aptive had access to Plaintiff's phone number because of their past relationship is not, in the Court's view, enough to tether the claims to the substance of the Aptive Agreement. As pointed out by Plaintiff, even broad arbitration clauses have limits to what claims will fall within their scope. *See, e.g.*, *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) (finding that a dispute that is "not related—with at least some directness—to performance of duties specified by the contract" does not "aris[e] out of" the contract so as to be covered by a standard arbitration clause); *Gamble*, 735 F. App'x at 666 (finding that a TCPA claim arose from post-agreement conduct that violated a distinct federal law, and not from a loan agreement). Here, Plaintiff's claims against Aptive do not relate to the performance of Aptive's duties under the Aptive Agreement. In fact, the parties' relationship under that agreement ended two years before Plaintiff received the text messages at issue. Instead, the claims are only tenuously connected to the Aptive Agreement simply because Aptive had access to Plaintiff's cell number because of the past relationship. The Court does not find that this connection is enough for the claims to "arise out of" the agreement. Therefore, the Court finds that Plaintiff's claims are not covered by the arbitration clause and Aptive's motion is denied.

## CONCLUSION

For the reasons discussed above, the Court denies Aptive's motion to compel arbitration.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Aptive's motion to compel arbitration and stay proceedings (Doc. No. [17]) is respectfully **DENIED**.

Dated:  December 9, 2024              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge