1            UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
2
      ------------------------------------------------------------
3                                      )
      Kristi Von Deylen,               )   File No. 24-cv-2051
4                                      )            (DWF-DJF)
            Plaintiff,                 )
5                                      )
      vs.                              )   St. Paul, Minnesota
6                                      )   September 20, 2024
      Aptive Environmental LLC,        )   10:26 a.m.
7                                      )
            Defendant.                 )
8                                      )
      ------------------------------------------------------------
9
10        **BEFORE THE HONORABLE DONOVAN W. FRANK**
              **UNITED STATES DISTRICT COURT JUDGE**

11                    **(MOTION HEARING)**

12    APPEARANCES
        For the Plaintiff:        Consumer Justice Center P.A.
13                                CARTER B. LYONS, ESQ.
                                  367 Commerce Court
14                                Vadnais Heights, Minnesota 55127

15      For the Defendant:        Mac Murray & Shuster
                                  WALTER CHARLES BLACKHAM, ESQ.
16                                6525 West Campus Oval
                                  Suite 210
17                                New Albany, Ohio 43054

18                                Sapientia Law Group
                                  SONIA L. MILLER-VAN OORT, ESQ.
19                                Suite 100
                                  12 South Sixth Street
20                                Minneapolis, Minnesota 55402

21      Court Reporter:           ERIN D. DROST, RMR-CRR
                                  Suite 146
22                                316 North Robert Street
                                  St. Paul, Minnesota 55101
23

24        Proceedings recorded by mechanical stenography;
      transcript produced by computer.
25

                    ERIN D. DROST, RMR-CRR
                       (651) 848-1227

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4          THE COURT:  Before we begin, why don't we have

5     introductions.  We can start on my right, counsel's left.

6          MR. LYONS:  Good morning, Your Honor.  Carter

7     Lyons representing the plaintiff Kristi Von Deylen.

8          MR. BLACKHAM:  Good morning, Your Honor.  Walter

9     Blackham representing the defendant Aptive Environmental,

10    LLC.

11         THE COURT:  Good morning.

12         MS. MILLER-VAN OORT:  Good morning, Your Honor.

13    Sonia Miller-Van Oort with Sapientia Law Group.  I'm local

14    counsel in this case.

15         THE COURT:  Okay.  I will represent to everyone

16    that I've had a chance to read all submissions.  I will have

17    a few questions as we go.  But with that in mind, we can

18    begin with defense counsel's motion to compel arbitration

19    whenever you're ready.  If you want to come to the podium.

20         MR. BLACKHAM:  Thank you, Your Honor.  Can I

21    approach?

22         THE COURT:  Yeah, and as most people are aware,

23    that podium goes up and down.  There's a little button on

24    the front of it there so you can put it wherever you want

25    it.

1          Then the microphones aren't the fancy

2     entertainment mics.  You have to speak fairly close into the

3     mic.  We all have the same microphone, so...

4          MR. BLACKHAM:  All right.  Your Honor, thank you

5     for having us today.  My name is Walter Blackham.  I'm with

6     Aptive Environmental, LLC.

7          We're here today on our client's motion to compel

8     arbitration.  So plaintiff brought this action relating to

9     alleged violations of the Telephone Consumer Protection Act

10    and associated Do Not Call regulations relating to

11    appointment follow-up reminder texts that they received.

12          Now, while our client doesn't dispute that the

13    calls occurred, we do dispute the nature of them, but most

14    importantly is relevant for these proceedings we filed a

15    motion to compel arbitration pursuant to the parties'

16    contract.

17          So plaintiff alleges that these calls first

18    occurred between a couple months in 2023.  However, the

19    parties in 2020 signed a contract for services as the basis

20    of plaintiff's claims as alleged by our auto dialer claims.

21          THE COURT:  And the contract was over on

22    January 12th of 2021?

23          MR. BLACKHAM:  Yes, it was, Your Honor.  It also

24    has a survivability provision.

25          THE COURT:  Correct.

1              MR. BLACKHAM:  Yes, Your Honor.

2         So the contract ended around that time.  We sent

3    the follow-up appointment text reminders in error to the

4    client -- or to the plaintiff due to an internal issue with

5    our system.

6         Our argument today is that the present proceedings

7    should be reduced to arbitration and we request the Court

8    issue an order compelling such.  The inquiry for whether

9    arbitration should be granted, as Your Honor likely knows,

10   is a two-step inquiry.  One, whether a valid arbitration

11   agreement exists, and, two, whether the current issue is

12   held within the scope of that arbitration clause.

13        I'm not going to speak for plaintiffs, and they

14   can of course dispute what I'm about to say, but I don't

15   think the existence of the agreement is in dispute.  I think

16   the scope of the arbitration clause is in dispute.

17        Plaintiffs contend that the current controversy is

18   not within the scope.  They offer some case law to that

19   effect, and I won't inundate the Court with my rebuttal on

20   that issue.  But I think suffice to say, the parties don't

21   dispute the existence of an arbitration agreement, and I

22   think, undoubtedly, the current controversy is within its

23   scope.

24        So absent the service contract with plaintiff, we

25   never would have made this call, we never would have had her

1    phone number.  Plaintiff never would have sent us any money.

2    We would have no relationship with plaintiff whatsoever.

3           The arbitration agreement, as plaintiffs readily

4    admit, is very broad.  It covers any dispute arising of or

5    relating to the agreement or any relationship between you

6    and Aptive resulting from the foregoing.

7           I would submit to the Court that this results

8    directly from the contract, but even if it didn't, it

9    certainly relates to a relationship resulting from the

10   contract.

11          As I noted, plaintiff has offered a couple of

12   cases apposite our contention which I can address if they

13   would like to bring them back up again, but without

14   inundating the Court and with waiting to hear some of

15   plaintiff's arguments, I will submit that the controversy is

16   readily within the scope of the arbitration agreement and

17   the parties bargained for it.  We don't have a contract of

18   adhesion here.  There was, in fact, an opt-out provision of

19   the arbitration clause which plaintiffs did not avail

20   themselves to.

21          THE COURT:  Now, separate from -- without using a

22   legal phrase, it seems to me kind of consistent with what

23   you are saying on the scope, is the -- I won't use -- I'll

24   use a phrase, it seems like to me the big ticket item here

25   is this relationship to the services or that language you

1    just used, and I have got the arbitration agreement in front

2    of me, because I think it's the -- we'll find out today, but

3    it's plaintiff's position that, well, yeah, we agree with

4    this if the conduct occurred during the -- during the

5    service.  So, yes, they could be suing us two, three years

6    later if it was conduct during, but we claim these phone

7    calls came two years later, so that -- it doesn't cover

8    that.  I think that's the issue you both put in front of me.

9         And then I think plaintiff's counsel takes it one

10   step further citing a couple cases and say, Well, and if

11   there is an ambiguity about, well, that issue, then you

12   should construe that in favor of our client.

13        But the -- anyways, but not to interrupt your

14   argument, but I think that's the big ticket item is, well,

15   did -- post-agreement conduct, as opposed to conduct during

16   the agreement, and then you've used the relationship issue

17   that's there, I think that's the issue you both put squarely

18   in front of me.  Not to oversimplify your position or

19   plaintiff's counsel, but I think that's the issues you put

20   squarely in front of me.

21        MR. BLACKHAM:  No, I think that's correct,

22   Your Honor.  Any time we can simplify the issues I think

23   that's a good thing.

24        Regarding those cases that plaintiff cited,

25   though, since you brought them up, I do think it is

1    important to note.  So there are two cases.  One was within

2    our present circuit and one I believe was the Eleventh

3    Circuit, but there were two cases they cited.  Both of those

4    cases are extremely apposite.

5            So the one in this circuit had a specific

6    exclusionary clause for the claims that were brought in

7    relation to the employee termination in that matter.  So

8    they specifically carved out the claim at issue in that

9    case, which is highly distinguishable from our case which is

10   on the other opposite end of the spectrum.  It's very broad.

11           And, furthermore, the Eleventh Circuit case -- I

12   don't want to introduce new case law.  I have some case law

13   to prove this if Your Honor would request it -- but the

14   arbitration provision at issue in that case did not

15   encompass tort claims, and the Courts in subsequent

16   determinations in Georgia and the Eleventh Circuit have held

17   that that case can be distinguished on the basis it did not

18   encompass tort claims.  Our arbitration clause, in contrast,

19   does encompass tort claims.

20           THE COURT:  I think you cited a case, the

21   *W. Liberty Foods v. Moroni Feed Company*, but I believe if we

22   take a look at that, apart from the arbitration agreement

23   itself, the conduct on the marketing breach occurred during

24   the -- before the contract expired, in other words, as

25   opposed to a couple years later, so somebody might suggest

1   that -- well, in fact, even in that case, it's probably not

2   relevant that the judge who wrote the opinion, Jim Gritzner,

3   who is now retired, grew up in the same little farm town I

4   did many years ago in south -- even though he was in Iowa

5   and I was here in Minnesota, but the -- but I think there

6   there was that ambiguity issue raised, and then he decided

7   to construe that.  But, yeah, that's -- but, yeah, anyway.

8   Sorry to interrupt your argument.

9           MR. BLACKHAM:  No, no.

10          THE COURT:  But I just thought I'd indicate I

11  think the issue is the -- well, does -- the post-agreement

12  conduct versus during the agreement conduct, so...

13          MR. BLACKHAM:  Yes, Your Honor.  So with regards

14  to whether the conduct was post-agreement or within the

15  agreement.  So, first, I think it's irrelevant -- or,

16  rather, it doesn't matter to our argument.  But, more

17  importantly, I think you could also make an argument it was

18  encompassed by the agreement.  Part of plaintiffs -- and

19  I'll deal with the latter argument first.

20          THE COURT:  All right.

21          MR. BLACKHAM:  Second, you probably know where I'm

22  going with the survivability clause.  With the latter,

23  plaintiff claims that we called them in violation of the

24  TCPA.  Their basis for these claims is that they did not --

25  and we dispute that we made telemarketing calls.

1          THE COURT:  True.

2          MR. BLACKHAM:  But the basis for their claims is

3     they did not check the box on the contract.  Plaintiff

4     cannot have it both ways.  They cannot simultaneously argue

5     that their claims arise because they didn't check the box on

6     the contract, but they are not subject to the arbitration

7     provision in the contract.

8          I think, clearly, in our case, particularly with

9     the survivability clause, it encompasses the present matter.

10    Plaintiff hasn't cited any case law demonstrating that

11    survivability clauses are prima facie unconscionable.  That

12    we --

13          THE COURT REPORTER:  Okay.

14          THE COURT:  Can you slow down just a little bit?

15          MR. BLACKHAM:  I'm sorry.  Yes.

16          Plaintiff hasn't argued that the survivability

17    clause is invalid, that it's unconscionable, or any type of

18    other equitable argument as would be needed to dispose of

19    the arbitration agreement.

20          As to whether the controversy occurred during the

21    term of the contract or after, I don't think it matters, and

22    plaintiff's own claims seem to suggest the same thing.

23          Furthermore, we do have another clause in here

24    that says we're allowed to call them with appointment

25    reminders, just another little side thing to put on there.

1       But I really do think in this particular circumstance,

2       particularly because plaintiffs had the opportunity to opt

3       out of the arbitration provision, I do think the

4       survivability clause should carry the day and is relevant to

5       that analysis, Your Honor.

6               THE COURT:  All right.

7               MR. BLACKHAM:  And for the foregoing reasons,

8       Your Honor, I believe we have a valid arbitration agreement

9       and the current controversy is certainly within the scope.

10      Accordingly, we would request the Court issue an order

11      compelling arbitration.

12              THE COURT:  We'll see where counsel focuses, and

13      then we'll have rebuttal.

14              MR. BLACKHAM:  Thank you, Your Honor.

15              THE COURT:  All right.  Thank you.

16              Now, I assume, and maybe I should know this, are

17      you, not relevant to the case, but are you the son of Tommy

18      Lyons, Jr.?

19              MR. LYONS:  I am, and then the grandson of Thomas

20      Lyons, Sr.

21              THE COURT:  Small world.  Okay.

22              MR. LYONS:  Thank you, Your Honor.  I'm here today

23      on behalf of the plaintiff to request that you deny

24      defendant's motion to send the proceeding to arbitration for

25      a handful of reasons.  And I'll start by saying that defense

1      counsel was correct, we do not dispute the existence of an

2      arbitration agreement.  We are just here -- or I am here to

3      say that the issues at hand, the dispute falls -- does not

4      fall within the scope of that arbitration agreement.

5              And you and counsel wrestled with some of the

6      ideas and positions on why.  And you accurately summarized,

7      first off, we think that the time lapse from when the

8      contract ended from the post-contract conduct at issue, we

9      think that that time matters, but also we really think that

10     although the arbitration agreement at issue here is broad,

11     just because it is broad doesn't mean it encompasses every

12     single possible future violation between the plaintiff and

13     defendant.

14             Specifically, I want to call your attention to the

15     case cited in plaintiff's brief, *Gamble v. New England Auto*

16     *Finance Company*.  Although the case is not precedential on

17     Your Honor, I do think it is extremely influential as we had

18     a arbitration -- motion to compel arbitration on a TCPA case

19     for post-contract conduct.  I think it is very parallel to

20     the facts at hand.

21             And on the -- on the topic of broad arbitration

22     contract -- excuse me, broad arbitration provisions and

23     whether the conduct falls within them, the Court did a

24     thorough analysis about -- you know, essentially saying just

25     because a contract is so broad -- or a provision is so

1    broad, there still has to be some sort of tether to the

2    agreement.  Specifically, that Court stated that the term

3    "arising out" of is broad but not all encompassing, while

4    recognizing that the dispute in question must be an

5    immediate foreseeable result of the performance of

6    contractual duties.

7           That Court went on to say that the plaintiff in

8    that situation signed an agreement by where the defendant

9    promised to provide her necessary funds to purchase an

10   automobile on a particular date in exchange for the promise

11   to pay the defendant back with interest.  The arbitration

12   provision only applies to a dispute arising out of or

13   related to that agreement.

14          Furthermore, the Court held that the plaintiff's

15   TCPA claim on the other hand arises not from the loan

16   agreement or any breach of it but from post-agreement

17   conduct that allegedly violates a separate distinct federal

18   law.

19          That's exactly what we have here, Your Honor.  We

20   have a complete --

21          THE COURT:  I'm sorry to interrupt you.  What

22   about the statement of counsel when he used -- and quoting

23   from your -- saying, well, but for the relationship between

24   the parties, we wouldn't have had the -- well, we don't

25   concede that we violated the statute and the case goes on

1  and doesn't go to arbitration.  They use that language, or

2  the relationship between your client and their client.

3          That's kind of -- not to oversimplify their

4  position, but that was one of the things they focused in --

5  under as opposed to the "under the agreement" language where

6  it says, "Under this agreement or any other or the

7  relationship between you and Aptive resulting," so I just

8  thought I'd --

9          MR. LYONS:  Yeah, absolutely, Your Honor.  But I

10  disagree with that but for statement.  But for the contract,

11  but for the relationship -- right? -- the text messages and

12  the calls would have never happened.  I'm under the

13  impression and plaintiff is under the impression that

14  Congress provided the plaintiff the rights through the TCPA.

15  That is 100 percent -- that existed before the contract was

16  signed, that existed during the contract was signed and the

17  life of the contract, and that existed after the contract

18  ended.  This is a completely different right that is

19  enumerated by Congress that is 100 percent excluded from the

20  contract in its entirety.  The only but for you can say is

21  that but for the service contract, plaintiff would not have

22  given her phone number to the defendant.  And although true,

23  there could have been other ways for the defendant to obtain

24  plaintiff's phone number.  I think that the contract itself

25  is unrelated in any way to the TCPA rights enumerated by

1    Congress that plaintiff has.

2          Continuing on in the analysis in *Gamble*, the Court

3    ultimately concluded we will not accept defendant's

4    invitation to boot string independent TCPA claims to a

5    completely distinct contract.

6          The bottom line is that Ms. Gamble, the

7    plaintiff's TCPA claim did not in any way arise from or

8    relate to the loan agreement, and the parties did not agree

9    to arbitrate those TCPA claims; right?  At the time the

10   contract was signed by both parties, right?  I don't think

11   it can be said that they agreed to arbitrate an entirely

12   separate claim totally unrelated to the contract two years

13   after the expiration of a contract just because a phone

14   number was listed in the contract.

15         Additionally, defendant's counsel's argument that

16   plaintiff citing to the contract itself is prima facie

17   evidence that the contract at issue is encompass -- or the

18   arbitration --

19         THE COURT:  Yeah, I think the phrase used was,

20   well, the plaintiff wants it both ways when you said that

21   they did not check the consent box on the agreement, and,

22   yeah, that's what he was referring to, I believe.

23         MR. LYONS:  Right.  And, again, this was an issue

24   that was explicitly discussed during that *Gamble* case, and

25   the Court ultimately held that they disagree.  They said the

1    defendant fundamentally misunderstands this important

2    factor.  Contrary to what the defendant asserts in its

3    brief, it is not the unsigned text consent provision which

4    gives Ms. Gamble the right not to receive unconsented-to

5    text messages from the defendant.

6            Furthermore, it went on to explain that in this

7    type of situation, the defendant could not have violated the

8    TCPA and Ms. Gamble could have brought a lawsuit against the

9    defendant for violations without there having ever been a

10   contract; right?  Same as this situation.  Without the

11   existence of a contract, plaintiff's TCPA claims still --

12   are still alive.  There's no tethering to the contract,

13   aside from the fact that her phone number was included on

14   it, that tethers it to the TCPA claims.

15           Furthermore, it went on -- the Court in *Gamble*

16   went on to say in terms of TCPA claims, the existence of a

17   contract is unnecessary and irrelevant unless the specific

18   contract contemplates future TCPA claims.

19           In the contract at issue, specifically the

20   arbitration agreement, there is no explicit carve-out for

21   future TCPA claims.  For this reason, Your Honor, we think

22   that the reasoning and the discussion in the *Gamble* case,

23   like I said before, although not precedential, is highly

24   influential to the facts at hand because they are so

25   similar.  And plaintiff urges the Court to follow the

1   reasoning in the *Gamble* case and to deny plaintiff's

2   motion -- or, excuse me, defendant's motion to compel

3   arbitration.

4        THE COURT:  Let's see where opposing counsel

5   focuses, and then if you'd like the last word, most lawyers

6   rarely turn it down -- I mean, occasionally they do.

7        MR. LYONS:  Thank you.

8        THE COURT:  But we'll soon find out.

9        MR. BLACKHAM:  Thank you, Your Honor.  So with

10  regards to a couple items cited by plaintiff's counsel, so

11  first with the *Gamble* case, I do want to really emphasize

12  it's not precedential in this Court, it's merely

13  influential, but I think it's distinguishable on a couple of

14  really significant grounds.  So as Your Honor noted and as

15  plaintiff noted, that case contained language for

16  arbitration arising out of or relating to the contract.  It

17  did not encompass claims relating to the relationship

18  stemming from the contract.

19       Plaintiff also admits that the number was on the

20  contract.  Plaintiff -- plaintiff's counsel intimated that

21  we might have gotten the number a different way.  There's no

22  allegation in any of the pleadings or filings that we got it

23  another way.  Plaintiff admits that it was on the contract.

24  According to the pleadings, we did, in fact, get it from

25  that contract.

1          And also distinguishing the *Gamble* case, as I

2     noted before, Your Honor, it doesn't include a provision for

3     statutory claims.  It is highly distinguishable on that way.

4     Absent a provision providing for statutory claims, you can

5     make an argument that's being used to snuff out a

6     plaintiff's right to sue or is being read too broadly to

7     kind of snuff out rights that they might have had otherwise.

8     What's really critical here is we're in no way trying to

9     deny plaintiff her day in court.  We're just trying to abide

10    by a valid arbitration agreement.

11         Also, I'm not sure if this was in *Gamble*, but

12    there's a specific opt-out provision that plaintiff did not

13    avail herself of with regards to our arbitration agreement.

14         And, finally, under plaintiff's analysis, from a

15    policy standpoint, Your Honor, it doesn't make sense to me.

16    If we were to abide by plaintiff's reasoning, then any

17    tortious claim a plaintiff could bring relating to a

18    contract, really relating to any matter between two parties,

19    they could simply wait for the service contract to expire.

20    I mean, we have a survivability clause here.

21         Say I enter into a relationship with AT&T and they

22    send me calls that I do not want, you know, even though I

23    have a contract with them.  Can I wait until the term of the

24    contract expires to then sue them even if there's a

25    survivability clause?  Now I understand plaintiff alleges

1   that the calls occurred after the fact here, but they were

2   still pursuant to the contract at the very least.  And I

3   would, in fact, argue even if Your Honor were to apply

4   *Gamble*, that these calls do arise from the relationship

5   between the party.  There's no allegation we got -- or,

6   rather, I'm sorry, arise from the contract.

7          There's no allegation that we called for any other

8   purpose rather than related to pest control services

9   appointment follow-up reminders which were indeed the

10  subject of plaintiff's contract.

11         Now, I don't want to get too far away from my main

12  point, but I think it could easily be reduced to the fact in

13  response to plaintiff's allegations, we had an arbitration

14  agreement.  That "arising out of the relationship" language

15  is very broad.  Plaintiffs had not argued that it's

16  unconscionable or should be struck down on any other

17  equitable grounds.  By the plain language, it does, in my

18  view, encompass the present controversy, and it's also

19  distinguishable from *Gamble* in that it includes broader

20  language as well as statutory claims which are at issue

21  here.

22         Finally, Your Honor, we do have the survivability

23  clause, which has not been alleged to have been

24  unconscionable or should be severed from the agreement in

25  any way, as well as an opt-out provision that plaintiff

1    didn't avail herself of.

2         So given these, the broadness of the arbitration

3    agreement, the fact that she didn't opt out, and the

4    survivability clause, as well as the fact this is not a

5    contract of adhesion.  The parties bargained for certain

6    aspects of it.  She didn't check the automated text box.

7    She didn't opt out of the arbitration provision.  I think

8    all of these factors combined together demonstrate that the

9    present controversy is certainly within the scope of the

10   agreement, and, as such, *Gamble* is inapposite.

11        The law in this jurisdiction does hold that

12   especially given that we're in a Federal Court with a

13   federal arbitration matter, that the policy favors

14   arbitration given the language in the agreement, the

15   survivability clause, and the lack of an opt-out reflected

16   by a declaration from my client, I would respectfully submit

17   that the Court should grant an order compelling arbitration.

18        THE COURT:  Would you agree that -- and it's been

19   touched on by both of you, and -- but the -- without

20   suggesting it sends the case one way or the other depending

21   on how many cases, whether they are binding on the Court or

22   not, there's probably a much smaller number of cases where

23   it's -- well, there's probably more than one

24   characterization -- but post-contract conduct, in other

25   words, there's -- there's probably -- yes, there's issues

1   where that comes up, but that's something that's probably

2   not litigated as much as -- and that you might well, say,

3   well, one reason is is it doesn't have this broad of a

4   arbitration agreement that relates to not just the services

5   but the conduct but the relationship of the parties but --

6         MR. BLACKHAM:  Yes, Your Honor.  It's not a

7   heavily litigated issue.  But also *Gamble* is distinguishable

8   on other grounds now that you say that.  It arose from a

9   separate offer for a separate loan agreement, I believe.  It

10  was an entirely separate agreement.  It was a new offer, if

11  you will, not related to that original matter.  In our

12  present circumstance, as I argued originally, you don't even

13  need to get to that relationship level with the clause.  I

14  think it arises directly out of the contract because we got

15  the number from the contract, we called her because of the

16  contract.  It was in our system because of the contract.  So

17  if you want to go that level, you can.  But I think *Gamble*

18  can be distinguished on those grounds too as a separate

19  agreement, a separate offer.

20        THE COURT:  All right.  I'll see where counsel

21  focuses in and if he wants the last word, and then I'll ask

22  you if you have anything further.

23        MR. BLACKHAM:  Thank you, Your Honor.

24        THE COURT:  And it must be -- must be very

25  difficult for your co-counsel to sit so quiet for Ms. Miller

1    Van Oort, so...

2              MS. MILLER-VAN OORT:  Indeed.

3              MR. LYONS:  Thank you, Your Honor.  I just wanted

4    to touch on a couple points counsel made.  So defense

5    counsel is coming back to the arising out of the contractual

6    relationship; right?  We have to keep in mind this is a

7    contract for a year's worth of pest control services; right?

8    This is a one year defendant was providing a service to

9    control pests on plaintiff's home and property.  That has

10   nothing to do with the TCPA.  That has nothing to do with

11   automated texts.  That has nothing to do with calls; right?

12   I want to keep that in mind.

13             The distinguishing factor between the arbitration

14   provision in *Gamble* and here that defense counsel makes is

15   arising out of the contractual relationship.  And I

16   remind -- I remind Your Honor that this is a contract for

17   pest control, and that at the time the contract was signed,

18   I don't believe it was the party's intent to arbitrate an

19   issue on the TCPA when the underlying contract was for pest

20   control.

21             THE COURT:  Well, isn't one of the other issues,

22   and you both addressed it earlier too, but one of the other

23   issues he's raised to distinguish this arbitration agreement

24   from others is that -- the relationship language, in other

25   words, "or the relationship between you and Aptive."  So

1    what, if anything, is most important for me to know about

2    that?  And you both addressed it, so I'm not saying it's

3    coming up for the first time now.

4         MR. LYONS:  Right.  But I think that is the

5    relationship, Your Honor; right?  The relationship is I'm

6    paying you -- or plaintiff's paying the defendant for a year

7    to conduct pest control services at her house; right?  I

8    don't think the relationship goes any further than that just

9    because a phone number was included on that contract.  The

10   contract -- the arbitration provision, you know, I don't

11   think it can be said that a contract for pest control, just

12   because the plaintiff listed her phone number on it, then

13   that that language -- the contractual relationship then

14   extends to all other rights under the law that are

15   enumerated to plaintiff as a consumer.  I think that's a

16   stretch of the imagination.

17        Also, the defendant -- or excuse me -- defense

18   counsel made the argument -- the but for argument; right?

19   But for the contract, the texts don't happen, the calls

20   don't happen.  But really the but for here is is but for the

21   glitch in defendant's system, none of this happens.  And

22   that's admitted to by defendant's employee Anna when she

23   talked to plaintiff on the phone and apologized and stated

24   there was a glitch in defendant's system that added people

25   from years ago; right?  I think that's the but for in this

1    situation.  Without the glitch in the system, plaintiff's

2    phone number, and presumably multiple other people that

3    contracts expired years ago got added back into the system.

4    I think that is the but for glitch that's at issue here.

5            Also, Your Honor, and I apologize, I forgot to do

6    this earlier, I have -- we cite to it in the brief, but it

7    was not included.  If you would like to see, I have the

8    additional extra welcome checklist that was given to the

9    plaintiff at the time that she did sign up for the services

10   where she explicitly did not opt in to receiving these text

11   messages.  If you'd like to see it, Your Honor, and I have

12   your permission --

13           THE COURT:  Don't I have that here?  I don't

14   think -- is that the one where you said she didn't check the

15   box?

16           MR. LYONS:  Yes.  But it's not the one that was in

17   the actual service contract.  Would you --

18           MR. BLACKHAM:  Your Honor, I would object.  That's

19   not in the pleadings.

20           MR. LYONS:  Neither was the service contract,

21   Your Honor.

22           MR. BLACKHAM:  Yes, it is.  It's an exhibit.  It's

23   incorporated as an exhibit, Your Honor, to the motion to

24   compel arbitration.

25           THE COURT:  Well whether it's part of the record

 1   or not, how would that change your position in the case?

 2          MR. LYONS:  It does not change my position,

 3   Your Honor.  I just was curious if you would like to see it

 4   because I know that it wasn't included as an exhibit in our

 5   motion.  Our position still stands that the TCPA is a

 6   completely different right enumerated by Congress that

 7   plaintiff has that is completely distinct from the box check

 8   contract or the service contract, and that we think the --

 9   the minute differences in distinguishing factors in *Gamble*

10   from the arbitration clause at issue are small enough.  And

11   like you said, with the lack of case law on the issue, I

12   think the *Gamble* reasoning is sound.

13          And we kindly request that Your Honor take it into

14   careful consideration, and we request that you deny

15   plaintiff's motion to compel arbitration.

16          THE COURT:  Well, with respect to that exhibit,

17   number one, while I don't think it would be prejudicial to

18   defense counsel, on the other hand, since I'm aware of the

19   provision and I think with or without it, it doesn't send

20   this case one way or the other, so I won't receive it at

21   this time.  And I think it will be apparently whatever my

22   decision is, with or without it, I've got the facts that I

23   need, and it doesn't send it one way or the other.

24          MR. LYONS:  Understood, Your Honor.  Thank you.

25          THE COURT:  Anything -- I suspect there will be

1    additional response by defense counsel if you'd like.

2           MR. BLACKHAM:  I do have some rebuttal,

3    Your Honor.

4           THE COURT:  All right.

5           MR. BLACKHAM:  Really quickly, Your Honor.

6    Plaintiff's counsel made a couple comments on how the

7    parties' intent doesn't evidence this encompasses the TCPA

8    or the TCPA might be excluded from these claims under the

9    arbitration clause.  I see no basis for that.  And, in fact,

10    ours is distinguishable from *Gamble* on those grounds because

11    it explicitly includes statutory claims.

12           Regarding the parties' intent, there's a clear

13    meeting of the minds and mutual assent as well.  Plaintiff

14    could have opted out of the provision if she thought it was

15    unfair.

16           Plaintiff also hasn't really addressed the

17    survivability provision.  And I guess I'll conclude with

18    plaintiff made some notion that the topic of the agreement,

19    the contract, was pest control but we're bringing TCPA

20    claims.  I'm not sure why that really matters.  The

21    arbitration agreement includes all statutory and tortious

22    claims, and whether the topic of the contract is pest

23    control is immaterial.  The topic of the contract in *Gamble*

24    was a loan agreement.  That doesn't have anything to do with

25    the TCPA.

1          And, also, going back to the -- what I'll leave

2     off with, Your Honor, is the relationship between the

3     parties as relates to the relationship language in the

4     agreement, isn't just because of the phone number.  We

5     provided services to plaintiff.  We interacted with her.  We

6     called and talked to her before.  There's a lot more to this

7     relationship than just the contract, to put it a different

8     way.

9          So, Your Honor, given that the parties don't

10    dispute the existence of an agreement, the presence of a

11    broad clause, a survivability provision and lack of opt-out,

12    as well as the only case plaintiffs site apposite is highly

13    distinguishable in a different circuit, I would respectfully

14    submit that we need the two-step inquiry for a motion for

15    arbitration and we respectfully request the Court grant an

16    order compelling arbitration.

17         THE COURT:  All right.  Thank you.

18         MR. BLACKHAM:  Thank you, Your Honor.

19         THE COURT:  Anything else, Mr. Lyons?

20         MR. LYONS:  Nothing from the plaintiff,

21    Your Honor.

22         THE COURT:  All right.  I'll thank you both for

23    your arguments.  I'll deem the matter submitted.  And

24    generally, it's my practice, as most counsel know, that --

25    because what's more frustrating to clients than lawyers is

1   when a judge says, Okay, I'll take it under advisement, then

2   the client will say, What does that mean?  When am I going

3   to hear from the Judge?  So generally my practice is for my

4   chambers to send out to the law firms involved the -- in the

5   next week or so, not my decision, but here's when we'll be

6   filing my decision.  I think it will be in the neighborhood

7   of 30 days.  But we'll send something out because sometimes

8   it's, like I said, more frustrating to the client, Well,

9   when are we going to hear from the Judge?  And I don't think

10  there's any issue here.

11          Unrelated issue is, well -- that, generally, okay,

12  we'll stay any further -- whether there's any discovery or

13  other issues out there, until you get my decision on this

14  motion.  So -- and in that -- ordinarily, I would say

15  something, without trying to telegraph anything, that, well,

16  perhaps the parties should chat to resolve it, but -- before

17  any more money or time is spent.

18          And oftentimes lawyers are thinking -- I can't

19  read their minds -- well, the Judge doesn't get it.  The

20  time for talk is over.  But here I didn't bring it up, just

21  because obviously they -- an unrelated issue to my decision

22  today is, well, this is also a -- an issue for a motion for

23  class action.  So the -- but -- so you'll hear from me.  And

24  then in that context, is there anything else by plaintiff's

25  counsel?

1              MR. LYONS:  Nothing from the plaintiff,

2      Your Honor.

3              MR. BLACKHAM:  Nothing further, Your Honor.  Thank

4      you.

5              THE COURT:  So everybody have a decent -- a decent

6      weekend; and, like I said, it's probably -- probably

7      difficult for you, Ms. Miller Van Oort, to come in and just

8      be quiet at counsel table.

9              MS. MILLER-VAN OORT:  I was very quiet today,

10     Your Honor, very quiet, but it's always a pleasure to be in

11     your courtroom, so thank you.

12             THE COURT:  So -- and -- yeah, it was a little

13     different context today.  If you'd have been here three days

14     ago, I have the newest MDL that's come to our district on

15     the data breach case against United Healthcare, and I had 52

16     lawyers sitting in here from around the country at my first

17     status conference on Tuesday.  So the -- yeah, a little

18     easier today.  So I'll deem the matter submitted and thank

19     you and we are in recess.  Thank you.

20          (Court adjourned at 11:01 a.m.)

21                        *      *      *

22

23

24

25

1          I, Erin D. Drost, certify that the foregoing is a

2     correct transcript from the record of proceedings in the

3     above-entitled matter to the best of my ability.

4               Certified by:  *s/ Erin D. Drost*

5                              Erin D. Drost, RMR-CRR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25